JONATHAN A. STIEGLITZ, ESQ.
(SBN 278028)
jonathan.a.stieglitz@gmail.com
THE LAW OFFICES OF
JONATHAN A. STIEGLITZ
11845 W. Olympic Blvd., Suite 800
Los Angeles, California 90064
Telephone: (323) 979-2063
Facsimile: (323) 488-6748
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nilda Garcia, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. |
| -against- | **DEMAND FOR JURY TRIAL** |
| Experian Information Solutions, LLC, TransUnion, LLC, OneMain Financial Group, LLC a/k/a OneMain Holdings, Inc.; | |
| Defendant(s). | |

Plaintiff Nilda Garcia ("Plaintiff"), by and through her attorneys, The Law Offices of Jonathan A. Stieglitz, as and for her Class Action Complaint against Defendants Experian Information Solutions, LLC ("Experian"), TransUnion, LLC ("TransUnion") (Experian and TransUnion each a "Bureau" and collectively "Bureaus"), and OneMain Financial Group, LLC a/k/a OneMain Holdings, Inc. ("OneMain"), individually and on behalf of a class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, respectfully sets forth, complains, and alleges, upon information and belief, the following:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as well as 15 U.S.C. § 1681p *et seq.*

2.      The Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1331.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), being that the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

4.      Plaintiff brings this action for damages arising from the Defendant's violations of 15 U.S.C. § 1681 *et seq.*, also known as the Fair Credit Reporting Act ("FCRA").

**PARTIES**

5.      Plaintiff, is a resident of the State of California, County of Sacramento.

6.      At all times material hereto, Plaintiff was a "consumer" as said term is defined under 15 U.S.C. § 1681a(c).

7.      Defendant Experian Information Solutions, LLC, is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and conducts substantial and regular business activities in this judicial district.

8.      Experian is an Ohio corporation registered to do business in this State.

9.      Experian and may be served with process upon C T Corporation System, 330 N. Brand Blvd, Suite 700, Glendale, CA  91203.

10.     Experian is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

11.     At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

12.     Experian PLC, the parent company for Experian, is traded on the London Stock Exchange under the symbol EXPN.

13.     In March 2022 Experian PLC had a market cap of more than $37 billion.

14.     Defendant TransUnion, LLC, is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

15.     TransUnion is a Delaware corporation registered to do business in this State.

16.     TransUnion may be served with process upon its registered agent at The Prentice-Hall Corporation, Inc., its registered agent for service of process at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

17.     TransUnion is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

18.     At all times material here to TransUnion disbursed such consumer reports to third parties under a contract for monetary compensation.

19.     Trans Union, the parent company of Defendant TransUnion, is traded on the New York Stock Exchange under the symbol TRU.

20.     In March 2022 Trans Union had a market cap of more than $19 billion.

21.     Defendant OneMain is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2.

22.     OneMain has an address for service c/o C T Corporation System 330 N Brand Blvd Ste 700 Glendale, CA 91203.

- 3 -

1

**CLASS ALLEGATIONS**

2       23.     Plaintiff brings this claim on behalf of the following case, pursuant to Fed. R. Civ. P.

3    23(a) and 23(b)(3).

4       24.     As to Experian, the Experian Class consists of:

5

6               a.  all individuals with addresses in the State of California;

7               b.  for whom Experian listed the "Consumer reported as deceased";

8               c.  regarding an individual who, at the time, was not listed on the Death Master

9                   File as deceased;

10              d.  which deceased information was disputed by the consumer but not removed by

11                  Experian within 30 days of the dispute;

12
                e.  which deceased notation was listed on or after a date two (2) years prior to the
13
                    filing of this action and on or before a date twenty-one (21) days after the filing
14
                    of this action.
15

16      25.     As to TransUnion, the TransUnion Class consists of:

17              a.  all individuals with addresses in the State of California;

18              b.  containing at least one inquiry on the individual's credit report or credit file;

19
                c.  for whom TransUnion listed the consumer as "deceased";
20
                d.  regarding an individual who, at the time, was not listed on the Death Master
21
                    File as deceased;
22

23              e.  and who also had a last payment status from the prior month on one or more

24                  accounts;

25              f.  which deceased notation was listed on or after a date two (2) years prior to the

26                  filing of this action and on or before a date twenty-one (21) days after the filing

27                  of this action

28

- 4 -

26.     As to OneMain, the OneMain Class consists of:

    a.  all individuals with addresses in the State of California;

    b.  for whom OneMain reported to Experian and/or TransUnion that the consumer was "deceased";

    c.  regarding an individual who, at the time, was not listed on the Death Master File as deceased;

    d.  which deceased information was disputed by the consumer to Experian and/or TransUnion;

    e.  which dispute was forwarded by Experian and/or TransUnion to OneMain;

    f.  where OneMain's response to the dispute did not include removal of the "deceased" marking;

    g.  which dispute response sent on or after a date two (2) years prior to the filing of this action and on or before a date twenty-one (21) days after the filing of this action.

27.     The identities of all class members are readily ascertainable from the records of Defendants and those companies and entities on whose behalf they report credit.

28.     Excluded from the Plaintiff Classes are the Defendants and all officers, members, partners, managers, directors and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action, and all members of their immediate families.

29.     There are questions of law and fact common to the Plaintiff Classes, which common issues predominate over any issues involving only individual class members. The principal issue is whether the Defendants' listing of living consumers as "deceased" violates 15 U.S.C. § 1681 *et seq*.

30.     The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories. The Plaintiff will fairly and adequately protect the interests of the Plaintiff Classes defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

31.     This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

a.  **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class defined above are so numerous that joinder of all members would be impractical.

b.  **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions' predominance over any questions or issues involving only individual class members. The principal issue is whether the Defendants' listing of living consumers as "deceased" violates 15 U.S.C. § 1681 *et seq*.

c.  **Typicality:** The Plaintiff's claims are typical of the claims of each class's members. The Plaintiff and all members of the Plaintiff Classes have claims arising out of the Defendants' common uniform course of conduct complained of herein.

d.  **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are averse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex

legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

    e. **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

32.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

33.    Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class(es) only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

### FACTUAL ALLEGATIONS

34.    Plaintiff incorporates the above allegations as if set forth here.

35.    On December 17, 2021 Plaintiff got married.

36.    On December 23, 2021 both Plaintiff and her husband were hospitalized with Covid-19.

37.    Plaintiff's husband went to the ICU.

38.    Plaintiff was pregnant at the time and went to the high-risk labor and deliver unit.

39.     Although not fully recovered and still requiring oxygen, Plaintiff was released from the hospital on January 4, 2022.

40.     Unfortunately, Plaintiff's husband did not recover.

41.     He passed away on January 19, 2022.

42.     His wife and unborn child were all alone without his financial and emotional support.

43.     Shortly thereafter, Plaintiff received a call from her OB-GYN.

44.     Plaintiff's doctor had received notice that Plaintiff was deceased.

45.     This was the first time Plaintiff realized she was being reported as deceased.

46.     Plaintiff's doctor was crying and thrilled to confirm that Plaintiff was alive.

47.     It appears that Plaintiff was accidentally marked deceased by the Social Security Administration.

48.     When Plaintiff called the Social Security Administration (SSA) to register for survivor benefits, the representative accidentally put Plaintiff's husband's deceased record on Plaintiff's file.

49.     Plaintiff was mistakenly marked deceased.

50.     Within a week of being incorrectly marked deceased, on February 1, 2022, Plaintiff was able to get it rectified.

51.     She was required to go in-person to the SSA office with her ID and sign documents confirming that she was not deceased and was very much alive.

52.     The SSA mailed her confirmation of its mistake.

53.     Upon information and belief, the SSA provides the Department of Commerce's National Technical Information Service (NTIS) a public file of death information.

54.     NTIS distributes the public file of death information, also known as the public Death Master File (DMF), to other agencies and private organizations, including credit reporting agencies.

55.     Plaintiff was on the DMF for a week or less.

56.     Upon information and belief, each Bureau has a data exchange agreement with the SSA to receive updated death information.

57.     Upon information and belief, OneMain has the ability to receive the same or similar updated death information.

58.     Upon information and belief, subsequent to her removal therefrom, each Defendant failed to cross check the DMF maintained by the SSA to verify whether Plaintiff was a part of the catalog of social security numbers that belong to deceased individuals.

59.     Had each Bureau maintained reasonable procedures they could have also realized that she is not deceased.

60.     Had each Bureau attempted to timely verify if Plaintiff was deceased, they would have realized she was in fact alive.

61.     The Bureaus have been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors.

62.     Upon information and belief, Furnisher was reporting Plaintiff as deceased to each Bureau.

63.     The information described above, furnished by each Furnisher and published by each Bureau is inaccurate.

64.     Each Bureau has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various

persons and credit grantors, both known and unknown.

65.     On information and belief, on date(s) better known to each Bureau, it issued credit reports concerning the Plaintiff that noted she was deceased.

66.     The information furnished by each Furnisher and published by each Bureau is and was inaccurate.

67.     Each Bureau has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

68.     Plaintiff's credit reports were showing inaccurate information about her being deceased.

69.     In contrast with each Bureau, non-party Equifax Information Services, LLC, was not incorrectly reporting Plaintiff as deceased.

70.     Plaintiff's Equifax credit report does not suffer from the same infirmities as Experian and TransUnion.

71.     This further demonstrates each Defendant's culpability.

72.     Plaintiff notified Experian that she disputed the accuracy of the information it was reporting on or around February 25, 2022 ("February Dispute").

73.     Plaintiff included the SSA letter confirming its mistake in marking Plaintiff as deceased, with her February Dispute.

74.     Plaintiff notified Experian that she disputed the accuracy of the information it was reporting on or around March 5, 2022 ("March Dispute").

75.     Plaintiff notified Experian that she disputed the accuracy of the information it was reporting on or around April 21, 2022 ("April Dispute") (the February Dispute, March Dispute, and April Dispute, each a "Dispute", and collectively "Disputes").

76.     In each Dispute, Plaintiff explained that she was not deceased.

77.     She explained why she had been marked deceased but that the issue was already corrected.

78.     Despite the Dispute(s), Plaintiff was still being reported incorrectly as deceased by Experian.

79.     Experian is required to notify Furnisher of Plaintiff's respective Dispute(s).

80.     It appears and is therefore averred that Experian notified Furnisher of Plaintiff's respective Dispute(s).

81.     Upon receipt of the Dispute(s) of the account by the Plaintiff from Experian, Furnisher failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed information.

82.     Had Furnisher done a reasonable investigation it would have been revealed to it that the information is inaccurate.

83.     A reasonable investigation by Experian and Furnisher would have revealed that Plaintiff was not deceased and that she was being incorrectly reported.

84.     Defendants were in receipt of the evidence showing that the reported information was inaccurate.

85.     Despite the Dispute(s) by the Plaintiff that the information on her consumer report was inaccurate with respect to the disputed information, Experian and Furnisher did not evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not make an attempt to substantially reasonably verify that the derogatory information concerning the disputed account was inaccurate.

86.     Experian violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable

investigation and failing to delete or correct the disputed trade line within 30 days of receiving Plaintiff's dispute letter.

87.     Experian violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the dispute(s) to Furnisher or, in the alternative, if Experian did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

88.     Each Bureau violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report.

89.     Notwithstanding Plaintiff's efforts, Defendants continue to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

90.     Furnisher continues to furnish credit data which is inaccurate and materially misleading, and each Bureau's reporting of the above-referenced tradeline(s) continue to be inaccurate and materially misleading.

91.     Defendants knew the information was inaccurate.

92.     These actions by Defendants caused extensive damage to Plaintiff.

### *Damages*

93.     Defendants' erroneous reporting affected and continues to affect Plaintiff's reputation, creditworthiness, and credit score.

94.     As a result of Defendants' failure to comply with the FCRA, Plaintiff has been damaged.

95.     Plaintiff has, inter alia, suffered a decreased credit score due to the inaccurate information on Plaintiff's credit file, loss of credit, loss of time, loss of money, loss of ability to purchase and benefit from credit, emotional pain and suffering, humiliation, severe stress,

feelings of helplessness, sleeplessness, increased heartrate, embarrassment, and a chilling effect on future applications for credit.

96. Plaintiff suffered damage to her reputation as it falsely appears as if she is dead.

97. This false information was published to numerous third-parties.

98. This negative information reflected poorly upon Plaintiff and is incompatible with the proper exercise of Plaintiff's lawful business, trade, or profession.

99. Plaintiff was also denied multiple funding opportunities due to Defendants' actions.

100. It appears that because Plaintiff is marked deceased, she no longer has a credit report in certain circumstances.

101. When a lender tries to pull the credit report, either she is marked deceased or no credit score or credit report.

102. Either way harms Plaintiff.

103. Plaintiff was unable to obtain funding for her late husband's funeral and medical expenses.

104. She had no choice but to resort to a public appeal for charity.

105. This was humiliating for Plaintiff.

106. The only way she could manage to afford a respectable burial for her beloved spouse, who died only a month after their wedding, was to appeal to the kindness of others, due to the unkindness of Defendants.

107. Plaintiff's credit score decreased or disappeared completely.

108. When Plaintiff's husband's car lease term expired, Plaintiff was able to finance a purchase of the vehicle.

109. However, the terms of the financing were negatively impacted due to Defendants' actions.

110.   The mortgage for Plaintiff's home was in her late husband's name.

111.   Plaintiff desired to get a mortgage to transfer the home into her name.

112.   However, Plaintiff was denied a mortgage.

113.   Due to all of this, Plaintiff needed to seek medical assistance from a mental health professional.

114.   However, due to the lack of funds and her inability to qualify for credit, Plaintiff was unable to afford counseling.

115.   After Plaintiff's baby was born in April 2022, Plaintiff's doctor demanded that she seek mental health services.

116.   If not for caring so much about her newborn, Plaintiff has considered that it would be easier to just join her late husband.

117.   Plaintiff is at high-risk for post-partum depression.

118.   As of the date of this filing, and despite the cost that she cannot afford, Plaintiff is actively pursuing treatment for her mental health.

119.   Plaintiff expended many hours dealing with and trying to remedy Defendants' improper actions.

120.   Plaintiff was emotionally distraught and damaged, had difficulty sleeping, and difficulty staying asleep.

121.   Plaintiff is lucky is she can even sleep 3-4 hours per night.

122.    Plaintiff feels crushed by the continued reporting of her death.

123.    Plaintiff tries not to think about these issues but is unable.

124.    Plaintiff felt helpless against Defendants, huge companies with armies of employees and billions of dollars in revenue fighting against Plaintiff and her plain attempt to correct her information so that it is properly reported.

125.   Plaintiff is very worried about her credit and that she is still being reported as deceased, and how she will be able to extricate herself from this quagmire.

126.   Plaintiff suffers from loss of enjoyment of life and feeling dejected.

127.   It seems unbelievable to her that she is alive and well and can still be reported as deceased, particularly as the initial mistake has long been corrected.

128.   Plaintiff has become more withdrawn, not wanting to be with other people.

129.   Plaintiff is exhausted from this and lacks the mental strength to continue dealing with these issues.

130.   She had been hoping to be able to remedy these issues on her own or that Defendants would realize their mistake.

131.   However, this has not been the case.

132.   Even her disputes have been essentially ignored.

133.   She was left with no choice but to initiate this legal action.

## FIRST CAUSE OF ACTION
### (Willful Violation of the FCRA as to the Bureaus)

134.   Plaintiff incorporates the allegations in paragraphs 1-133 above as if set forth here.

135.   This is an action for willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

136.   Each Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that each Bureau maintained concerning the Plaintiff.

137.   Experian violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete disputed tradelines within 30 days of receiving Plaintiff's dispute(s) and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

138.   The FCRA has provisions that specifically govern disputes like this, yet Experian failed to comply with those provisions.

139.   Each Bureau has willfully and recklessly failed to comply with the Act.

140.   The failure of each Bureau to comply with the Act include but are not necessarily limited to the following:

    a)  The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

    b)  The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised each Bureau was inaccurate;

    c)  As to Experian:

        i.   The failure to remove and/or correct the inaccuracy and derogatory information after a reasonable request by the Plaintiff;

        ii.  The failure to promptly and adequately investigate information which Bureau had notice was inaccurate;

        iii. The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

        iv.  The failure to take adequate steps to verify information Bureau had reason to believe was inaccurate before including it in the credit report of the consumer; and

        v.   The failure to provide notice of a dispute to the furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the furnisher in response to a dispute.

141.     As described above and as a result of the conduct, action and inaction of each Bureau, the Plaintiff suffered, inter alia, suffered a decreased credit score due to the inaccurate information on Plaintiff's credit file, loss of credit, loss of time, loss of money, loss of ability to purchase and benefit from credit, emotional pain and suffering, humiliation, severe stress, feelings of helplessness, sleeplessness, increased heartrate, embarrassment, and a chilling effect on future applications for credit.

142.     The conduct, action and inaction of each Bureau was willful rendering each Bureau liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

143.     The Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, as individual and class representative, demands judgment in her favor against each Bureau for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681n.

## SECOND CAUSE OF ACTION
### (Negligent Violation of the FCRA as to the Bureaus)

144.     Plaintiff incorporates the allegations in paragraphs 1-133 above as if set forth here.

145.     This is an action for negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

146.     Each Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that each Bureau maintained concerning the Plaintiff.

147.     Experian violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute(s)

and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

148. The FCRA has provisions that specifically govern disputes such as these, yet Experian failed to comply with those provisions.

149. Each Bureau has negligently failed to comply with the Act.

150. The failure of each Bureau to comply with the Act include but are not necessarily limited to the following:

a) The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b) The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised each Bureau was inaccurate;

c) As to Experian:

   i. The failure to remove and/or correct the inaccuracy and derogatory information after a reasonable request by the Plaintiff;

   ii. The failure to promptly and adequately investigate information which Bureau had notice was inaccurate;

   iii. The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

   iv. The failure to take adequate steps to verify information Bureau had reason to believe was inaccurate before including it in the credit report of the consumer; and

v.   The failure to provide notice of a dispute to the furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the furnisher in response to a dispute.

151.   As described above and as a result of the conduct, action and inaction of each Bureau, the Plaintiff suffered, inter alia, suffered a decreased credit score due to the inaccurate information on Plaintiff's credit file, loss of credit, loss of time, loss of money, loss of ability to purchase and benefit from credit, emotional pain and suffering, humiliation, severe stress, feelings of helplessness, sleeplessness, increased heartrate, embarrassment, and a chilling effect on future applications for credit.

152.   The conduct, action, and inaction of each Bureau was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

153.   The Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, as individual and class representative, demands judgment in her favor against each Bureau for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681o.

## THIRD CAUSE OF ACTION
### (Willful Violation of the FCRA as to Furnisher)

154.   Plaintiff incorporates the allegations in paragraphs 1-133 above as if set forth here.

155.   This is an action for willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

156.   Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

157.    Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

158.    The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

159.    The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to any other agencies which were supplied such information.

160.    Defendant OneMain willfully and recklessly violated 15 U.S.C. § 1681s-2 (b) as described above, including, but not limited to, failing to fully and properly investigate the dispute(s) of the Plaintiff, failing to review all relevant information regarding same, and failing to correctly report results of an accurate investigation to the credit reporting agencies.

161.    Defendant OneMain continued to report incorrect information on the Plaintiff's credit report after being notified of her dispute(s) regarding the inaccuracies in relation to said accounts.

162.    As described above and as a result of the conduct, action and inaction of OneMain, the Plaintiff suffered, inter alia, suffered a decreased credit score due to the inaccurate information on Plaintiff's credit file, loss of credit, loss of time, loss of money, loss of ability to purchase and benefit from credit, emotional pain and suffering, humiliation, severe stress, feelings of helplessness, sleeplessness, increased heartrate, embarrassment, and a chilling effect on future applications for credit.

163.    The conduct, action, and inaction of OneMain was willful, rendering it liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

164.    The Plaintiff is entitled to recover reasonable costs and attorney's fees from OneMain in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, as individual and class representative, demands judgment in her favor against Defendant OneMain for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681n

### FOURTH CAUSE OF ACTION
**(Negligent Violation of the FCRA as to Furnisher)**

165.   Plaintiff incorporates the allegations in paragraphs 1-133 above as if set forth here.

166.   This is an action for negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

167.   Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

168.   Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

169.   The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

170.   The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to any other agencies which were supplied such information.

171.   As described above, OneMain is liable to the Plaintiff for negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2 (b).

172.   After receiving the dispute notice(s) from Experian, OneMain negligently failed to conduct its reinvestigation in good faith.

173.    A reasonable investigation would require a furnisher such as OneMain to consider and evaluate a specific dispute by the consumer, along with all other facts, evidence and materials provided by the agency to the furnisher.

174.    The conduct, action and inaction of Defendant OneMain was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

175.    As described above and as a result of the conduct, action and inaction of OneMain, the Plaintiff suffered, inter alia, suffered a decreased credit score due to the inaccurate information on Plaintiff's credit file, loss of credit, loss of time, loss of money, loss of ability to purchase and benefit from credit, emotional pain and suffering, humiliation, severe stress, feelings of helplessness, sleeplessness, increased heartrate, embarrassment, and a chilling effect on future applications for credit.

176.    The Plaintiff is entitled to recover reasonable costs and attorney's fees from the Defendant OneMain in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, as individual and class representative, demands judgment in the favor against Defendant OneMain for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681o.

## DEMAND FOR TRIAL BY JURY

177.    Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a)    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative, and Jonathan Stieglitz, Esq., as Class Counsel;

b)   For actual damages provided and pursuant to 15 U.S.C. § 1681(o)(a) be awarded for each negligent violation as alleged herein;

c)   For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

d)   For statutory damages provided and pursuant to 15 U.S.C. § 1681n(a);

e)   For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

f)   For Punitive damages provided and pursuant to 15 U.S.C. § 1681n(a)(2);

g)   For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n(a)(3), 15 U.S.C. § 1681o(a)(2) and 15 U.S.C. § 1640(a)(3);

h)   For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated:   May 25, 2022

THE LAW OFFICES OF JONATHAN A. STIEGLITZ

By:   /s/ Jonathan A Stieglitz
Jonathan A Stieglitz
*Attorneys for Plaintiff*